UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>           Plaintiff,<br><br>     v.<br><br>MICHAEL RIEGEL,<br><br>           Defendant. | Case No. 13-cv-09050 (LGS) (JLC)<br><br><br><br><br><br><br>Jury Trial Demanded |

**ANSWER, AFFIRMATIVE DEFENSES AND**
**COUNTERCLAIMS OF MICHAEL RIEGEL**

Defendant Michael Riegel ("Mr. Riegel" or "Defendant"), by and through his undersigned counsel, submits herein his Answer, Affirmative Defenses and Counterclaims to the Complaint filed by Plaintiff International Business Machines Corporation ("IBM" or "Plaintiff").

**Nature of the Action**

1. Mr. Riegel denies the allegations of Paragraph 1, except admits that he received $285,760.93 in connection with certain IBM long term performance plans.

2. Mr. Riegel denies the allegations of Paragraph 2, except admits that the referenced documents are annexed to the Complaint as Exhibits A-J, and that he received certain equity awards thereunder, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

3. Mr. Riegel denies the allegations of Paragraph 3, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

4. Mr. Riegel denies the allegations of Paragraph 4, except admits that IBM purports to seek a declaratory judgment regarding its right to rescind certain IBM equity awards, as well as damages for breach of contract or unjust enrichment.

## Parties

5. Mr. Riegel admits the allegations of Paragraph 5.

6. Mr. Riegel denies the allegations of Paragraph 6, except admits that he is an individual who resides in North Carolina, and that he was employed by IBM until on or about October 25, 2013.

## Jurisdiction and Venue

7. Mr. Riegel states that the allegations in Paragraph 7 consist of legal conclusions to which no response is required. To the extent an answer is required, Mr. Riegel responds that because Mr. Riegel and IBM are citizens of different states, the federal courts of the State of New York properly have jurisdiction over this case.

## Relevant Facts

### IBM and its Long-Term Performance Plans

8. Mr. Riegel admits the allegations of Paragraph 8.

9. Mr. Riegel denies the allegations of Paragraph 9, except admits that he received certain equity awards, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

10. Mr. Riegel denies the allegations of Paragraph 10, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

11. Mr. Riegel denies the allegations of Paragraph 11, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

12. Mr. Riegel denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning the "designated committee," otherwise denies the allegations of Paragraph 12, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

13. Mr. Riegel denies the allegations of Paragraph 13, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

14. Mr. Riegel denies the allegations of Paragraph 14, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

15. Mr. Riegel denies the allegations of Paragraph 15, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

16. Mr. Riegel denies the allegations of Paragraph 16, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

17. Mr. Riegel denies the allegations of Paragraph 17, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

18. Mr. Riegel denies the allegations of Paragraph 18, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

**Michael Riegel and His Receipt of IBM Equity Awards**

19. Mr. Riegel admits the allegations of Paragraph 19.

20. Mr. Riegel denies the allegations of Paragraph 20, and respectfully refers the Court to the referenced documents for the terms and conditions thereof.

**Mr. Riegel's Resignation from IBM and Employment by Cisco, an IBM Competitor**

21. Mr. Riegel denies the allegations of Paragraph 21, except admits that his resignation from IBM became effective on October 25, 2013, and that he currently is an employee of Cisco.

22. Mr. Riegel denies the allegations of Paragraph 22.

23. Mr. Riegel denies the allegations of Paragraph 23.

24. Mr. Riegel denies the allegations of Paragraph 24, except admits that he has not agreed to pay $285,760.93 to IBM.

## COUNT I — Declaratory Judgment

25. Mr. Riegel incorporates his responses to Paragraphs 1 through 24 of the Complaint as if fully set forth herein.

26. Mr. Riegel denies the allegations of Paragraph 26.

27. Mr. Riegel denies the allegations of Paragraph 27, except admits that he has not agreed to pay $285,760.93 to IBM.

28. Mr. Riegel denies the allegations of Paragraph 28.

## COUNT II — Breach of Contract

29. Mr. Riegel incorporates his responses to Paragraphs 1 through 28 of the Complaint as if fully set forth herein.

30. Mr. Riegel states that the allegations in Paragraph 30 consist of legal conclusions to which no response is required, and otherwise denies the remaining allegations of Paragraph 30.

31. Mr. Riegel denies the allegations of Paragraph 31.

32. Mr. Riegel denies the allegations of Paragraph 32.

33. Mr. Riegel denies the allegations of Paragraph 33.

## COUNT III — Unjust Enrichment

34. Mr. Riegel incorporates his responses to Paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35. Mr. Riegel denies the allegations of Paragraph 35.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred, in whole or in part, by the equitable doctrines of unclean hands, waiver and estoppel.

### THIRD AFFIRMATIVE DEFENSE

Any additional defenses or counterclaims that discovery may reveal.

## COUNTERCLAIMS

Michael Riegel ("Mr. Riegel" or "Counterclaim Plaintiff"), by way of counterclaim against International Business Machines Corporation ("IBM" or "Counterclaim Defendant"), alleges as follows:

### THE PARTIES

1. Mr. Riegel is an individual who resides in North Carolina. He worked for IBM as an MBA intern during the summer of 1997, rejoined IBM as an employee in 1998 and remained an employee of IBM until on or about October 25, 2013.

2. Upon information and belief, IBM is a corporation organized under the laws of the State of New York with its principal place of business located in Armonk, New York, in Westchester County.

### BACKGROUND

**Mr. Riegel's Equity Award Agreement and Non-Competition Agreement**

3. Prior to and as recently as June 8, 2012, Mr. Riegel received under IBM's 1999 Long-Term Performance Plan (the "1999 LTPP") and IBM's 2001 Long-Term Performance Plan (the "2001 LTPP," and, with the 1999 LTPP, the "LTPP") certain equity awards that are the

5

subject of this action (the "Equity Awards") pursuant to Equity Award Agreements (the "Equity Award Agreements").

4. These Equity Award Agreements are annexed to IBM's Complaint as Exhibits A through E.

5. These Equity Award Agreements contain a cancellation and rescission provision that states that the participant understands "that IBM may cancel, modify, rescind, suspend, withhold or otherwise limit or restrict this award…if [Mr. Riegel] render[s] services for a competitor prior to, or during the Rescission Period. [Mr. Riegel] understand[s] that the Rescission Period that has been established is 12 months." (Exhibit A to IBM's Complaint, p. 3; Exhibit B to IBM's Complaint, p. 2; Exhibit C to IBM's Complaint, p. 2; Exhibit D to IBM's Complaint, p. 2; Exhibit E to IBM's Complaint, p. 2).

6. The 1999 LTPP prospectus (the "1999 Prospectus"), annexed to IBM's Complaint as Exhibit F, or the 2001 LTPP prospectus (the "2001 Prospectus") annexed to IBM's Complaint as Exhibit G (collectively, the "Prospectuses"), state that they relate to the 1999 LTPP and 2001 LTPP, respectively.

7. The Prospectuses each contain a cancellation and rescission provision that provides that IBM may cancel or rescind any equity award if the recipient engages in "Detrimental Activity" during the "Rescission Period." (Exhibit F to IBM's Complaint pp. 9-10; Exhibit G to IBM's Complaint, p. 7.)

8. The Prospectuses define "Detrimental Activity" as including, among other things, "the rendering of services for any organization or engaging directly or indirectly in any business which is or becomes competitive with [IBM]." (Exhibit F to IBM's Complaint, p. 9; Exhibit G to IBM's Complaint, p. 7.)

9. The Equity Award Agreements annexed to IBM's Complaint as Exhibits A through D state that Equity Awards are accepted subject to a document entitled "Terms and Conditions of Your Equity Award: Effective June 8, 2011," annexed to IBM's Complaint as Exhibit H, "Terms and Conditions of Your Equity Award: Effective May 1, 2010," annexed to IBM's Complaint as Exhibit I, or "Terms and Conditions of Your Equity Award: Effective June 8, 2009," annexed to IBM's Complaint as Exhibit J (Exhibits H, I, and J to IBM's Complaint, collectively, the "Terms and Conditions").

10. The Terms and Conditions each contain a cancellation and rescission provision that refers back to the cancellation and rescission provisions of the Equity Award Agreements. (Exhibit H to IBM's Complaint, p. 4; Exhibit I to IBM's Complaint, p. 4; Exhibit J to IBM's Complaint, p. 4).

11. Mr. Riegel signed the Non-Competition Agreement, attached to Mr. Riegel's Answer, Affirmative Defenses, and Counterclaims as Exhibit 1, on July 16, 2009.

12. The Non-Competition Agreement provides in section (1)(c) that Mr. Riegel will not "(i) '[e]ngage in or [a]ssociate with' (a) any 'Business Enterprise,' or (b) any competitor of the Company, or (ii) solicit, for competitive business purposes, any customer of the Company with which [he] was involved as part of [his] job." (Exhibit 1, p. 2).

13. The Non-Competition Agreement defines "Business Enterprise" as "any entity that engages in, or owns or controls, any interest in any entity that engages in, competition with any business unit or division of the Company in which [Mr. Riegel] worked at any time during the three (3) year period prior to the termination of [Mr. Riegel's] employment." (Exhibit 1, p. 3).

14.     The Non-Competition Agreement defines "Engage in or Associate with" as "engagement or association as a sole proprietor, owner, employer, director, partner, principal, investor, joint venture, shareholder, associate, employee, member, consultant, contractor, or otherwise." (Exhibit 1, pp. 3-4).

**Mr. Riegel's Departure from IBM**

15.     For the final four-and-a-half years of his employment with IBM, Mr. Riegel worked in marketing in IBM's software division.

16.     For the first two-and-a-half to three years of that time period, Mr. Riegel worked as Vice President of Marketing for IBM's Developer Relations business. During this timeframe, Mr. Riegel was involved with recruiting ISV (independent software vendors) partners, individual developers, and startup companies to work with IBM's various hardware and software products. He then worked to enable these partners to sell their solution with IBM's technology to satisfy the end-customers' needs. Cisco Systems, Inc. ("Cisco") was one of the many partners working with IBM during this timeframe on a variety of solutions that IBM and Cisco jointly sold to clients.

17.     During his final 18 months at IBM, Mr. Riegel worked as Vice President, Mobile & WebSphere Solutions in IBM's Software Group. During this timeframe, Mr. Riegel was involved in the marketing effort for IBM's Mobilefirst and WebSphere software products. The MobileFirst software enables clients to write and manage new mobile applications, and the WebSphere products enable clients to build and manage their web site environments. Cisco does not have software in either of these market segments.

18.     Typically, when an employee leaves IBM to go to a direct competitor, that employee is escorted out the door (or "walked," in industry vernacular) on the day he or she informs IBM that he or she is leaving. This is typically done, among other reasons, to ensure

that a departing employee bound for a competitor no longer has access to confidential or proprietary information of the current employer, or the ability or opportunity to appropriate documents or information that may be used by the departing employee to compete with the current employer.

19.     On October 1, 2013, Mr. Riegel informed his supervisors at IBM, Software Middleware Group Vice President Doug Brown ("Mr. Brown") and WebSphere Software General Manager Marie Weeks ("Ms. Weeks"), that he was leaving IBM and joining Cisco. However, neither Mr. Brown nor Ms. Weeks, nor anyone else at IBM, sought to have Mr. Riegel escorted out, indicating to Mr. Riegel that IBM – and, in particular, those within IBM most knowledgeable about Mr. Riegel's job function and duties – did not view Mr. Riegel's employment with Cisco as competitive with IBM or otherwise in violation of any of Mr. Riegel's obligations to IBM.

20.     In fact, Mr. Brown and Ms. Weeks did not view Mr. Riegel's prospective employment at Cisco as competitive with IBM. To the contrary, not only did Mr. Brown express no concern whatsoever about Mr. Riegel joining Cisco, but he and Mr. Riegel agreed that Mr. Riegel would remain at IBM an additional three weeks to transition his responsibilities in advance of his departure. Upon information and belief, and based on Mr. Riegel's experience during more than 16 years of IBM employment, had IBM truly believed that Mr. Riegel had accepted a competitive position, it would have neither requested nor allowed him to remain in its employ for an additional three weeks.

21.     Mr. Riegel's last day at IBM was October 25, 2013. Following his departure, IBM's legal department asserted, for the first time, that Mr. Riegel was in breach of both the Equity Award Agreement and the Non-Competition Agreement, and that it intended to seek to

enforce both agreements against Mr. Riegel. Mr. Riegel was shocked as this was entirely inconsistent with his prior communications with his Manager, Mr. Brown, as well as with IBM's request that Mr. Riegel remain at IBM for an additional period of time to ensure a smooth transition. Indeed, when Mr. Riegel advised Mr. Brown of the position taken by IBM's legal department, Mr. Brown himself expressed surprise and dismay, and told Mr. Riegel that the legal department's position was completely contradictory to the input he had given IBM's lawyers. Thereafter, Mr. Brown informed Mr. Riegel that he had even called IBM's lawyers to intervene on Mr. Riegel's behalf and to "set the record straight," but was told by the lawyers to "stay out of it."

22. Mr. Riegel began working at Cisco on November 4, 2013.

23. Cisco does not do business in the Websphere and Mobile business sectors. Further, Cisco does not provide any software that enables clients to build new mobile applications, nor does Cisco provide software for the creation of website environments.

24. Cisco and IBM are not competitors, either generally, or in the specific areas in which Mr. Riegel works at Cisco. To the contrary, they are strategic business partners, together generating in excess of $1 billion of revenue annually. Indeed, Cisco's most recent Annual Report filed on September 10, 2013 specifically notes that it currently has a "Strategic Alliance" with IBM in order to "produce industry advancement and acceleration of new markets."

25. Indeed, on November 6, 2013 – Mr. Riegel's third day of work at Cisco – Cisco held a major product launch in New York for its new data center and Cloud offering called "Application Centric Infrastructure." IBM is one of Cisco's premier strategic partners for this new product, and IBM co-presented on stage with Cisco to tout this further strategic partnership between the companies. IBM's General Manager, Cloud & Smarter Infrastructure, Deepak

Advani, described this latest key collaboration as follows: "Because we are so aligned in our points of view, we now have the ability to collaborate. . . ." Mr. Advani further emphasized, "I really think that this move towards software defined environments and Application Centric Infrastructure provides a great opportunity for IBM and Cisco to deepen our collaboration and the reason I say that is because our points of view are very aligned."

26. Other references to the close Cisco and IBM business partnership or "Strategic Alliance" are myriad, and are found both on Cisco's and IBM's websites, as well as in press releases, trade publications and industry reports. For example, press releases issued jointly by Cisco and IBM tout their "global alliance," their "strategic relationship," and the "powerful combination" and "full spectrum" of "services and jointly developed solutions" they offer. The longstanding close and cooperative relationship between the two companies is perhaps best characterized in the title of a white paper that appears on both companies' websites, "IBM and Cisco: Two companies, one team, infinite solutions."

27. At Cisco, Mr. Riegel's job consists of marketing consulting, basic maintenance services, managed services and cloud based services. His role is focused on marketing campaigns, sales enablement and value proposition development in these areas for Cisco Services and Cisco's key business partners.

28. The consulting services Mr. Riegel offers at Cisco do not overlap with the consulting services he offered at IBM.

29. Upon information and belief, other IBM executives who are subject to IBM's standard Equity Award Agreement and Non-Competition Agreement have joined Cisco recently without IBM asserting that employment with Cisco was "competitive" or would result in a violation of such agreements. For example, in August 2013 – just three months prior to

Mr. Riegel's departure from IBM – another IBM executive in the Middle East who himself was subject to such agreements joined Cisco.  IBM, however, did not protest this executive joining Cisco, thus indicating to Mr. Riegel that at least as recently as August 2013, IBM did not view Cisco as a competitor.

30. Upon information and belief, IBM has used and is continuing to use its Equity Award Agreement and Non-Competition Agreement to intimidate certain IBM employees and to coerce them to remain in its employ, by threatening to claw back such employees' earned compensation and incentives, in a manner that is improper, arbitrary, capricious and punitive, and intended to suppress competition in the market, as well as to impede the mobility of its employees, even when it knows that the employee is not competing with IBM, and that no legitimate business interest of IBM is at stake.

31. In addition to imposing that significant financial penalty, IBM seeks to further intimidate these individuals by causing them to incur potentially significant litigation costs, not only requiring the individual to retain counsel to defend against a lawsuit brought by a Fortune 100 company with near limitless resources, but potentially to shift IBM's attorneys' fees and costs to that individual as well.  Thus, the only real purpose of the selective use of the punitive clawback provisions of the agreement that IBM seeks to enforce against Mr. Riegel is to make it prohibitively expensive for an employee to leave his current employment with IBM.

## JURISDICTION AND VENUE

32. IBM originally commenced this action in New York Supreme Court, County of Westchester.  Mr. Riegel removed the action to this Court based on diversity jurisdiction.

## FIRST COUNTERCLAIM — Declaratory Judgment

33. Mr. Riegel repeats and re-alleges the allegations of Paragraphs 1 through 32 of his Counterclaims as if fully set forth herein.

34.     By accepting employment at Cisco, a company that is not a competitor of IBM, Mr. Riegel has not violated any Equity Award Agreements, Prospectuses or Terms and Conditions to those Equity Award Agreements, or the Non-Competition Agreement.

35.     Therefore, Mr. Riegel has the right to keep the $285,760.93 that IBM paid him in connection with his equity awards.

36.     Accordingly, Mr. Riegel is entitled to a declaratory judgment confirming that he did not violate any Equity Award Agreements, Prospectuses or Terms and Conditions to those Equity Award Agreements, or the Non-Competition Agreement, and confirming his right to keep the $285,760.93 that IBM paid him in connection with his Equity Awards.

### SECOND COUNTERCLAIM — Declaratory Judgment

37.     Mr. Riegel repeats and re-alleges the allegations of Paragraphs 1 through 36 of his Counterclaims as if fully set forth herein.

38.     The Non-Competition Agreement is unenforceable under New York law with respect to Mr. Riegel, as it does not protect any legitimate business interest of IBM.

39.     Accordingly, Mr. Riegel is entitled to a declaratory judgment stating that the Non-Competition Agreement is unenforceable under New York law with respect to Mr. Riegel.

### THIRD COUNTERCLAIM — Tortious Interference with Contractual Relations

40.     Mr. Riegel repeats and re-alleges the allegations of Paragraphs 1 through 39 of his Counterclaims as if fully set forth herein.

41.     At the time it filed suit against Mr. Riegel, IBM was aware of the employment agreement between Mr. Riegel and Cisco.

42.     Through its lawsuit against Mr. Riegel and by requiring that Mr. Riegel repay the $285,760.93 that IBM paid him in connection with his Equity Awards, IBM has attempted and is

attempting to intimidate Mr. Riegel and to intentionally induce Mr. Riegel to terminate his employment agreement with Cisco.

43. Should Mr. Riegel terminate his employment agreement with Cisco, he will suffer damages, including lost compensation.

44. Thus, IBM has tortiously interfered with the contractual relations between Mr. Riegel and Cisco. As a result of IBM's wrongful actions, Mr. Riegel has suffered damages, in an amount to be proven.

## FOURTH COUNTERCLAIM — Breach of Contract

45. Mr. Riegel repeats and re-alleges the allegations of Paragraphs 1 through 45 of his Counterclaims as if fully set forth herein.

46. Mr. Riegel has complied with all of his obligations under the Equity Award Agreements.

47. IBM has breached the Equity Award Agreements, and their respective Prospectuses and Terms and Conditions, by filing suit against Mr. Riegel, by stating that IBM is entitled to rescind the Equity Awards Mr. Riegel exercised in the twelve months prior to his acceptance of employment by Cisco, and by requiring that he repay the $285,760.93 that IBM paid him in connection with his Equity Awards.

48. As a result of IBM's wrongful actions, Mr. Riegel has suffered damages, in an amount to be proven.

## FIFTH COUNTERCLAIM – Unfair Competition

49. Mr. Riegel repeats and re-alleges the allegations of Paragraphs 1 through 49 of his Counterclaims as if fully set forth herein.

50. Through its lawsuit against Mr. Riegel, IBM is attempting to coerce Mr. Riegel into discontinuing his employment at Cisco, as well as to intimidate other IBM employees from

accepting employment with employers other than IBM, and to intimidate such potential employers from considering candidates who have previously worked at IBM, and are or may be subject to the restrictive covenants contained in IBM's agreements.

51. Accordingly, IBM's actions with respect to Mr. Riegel constitute unfair competition.

52. As a result of IBM's wrongful actions, Mr. Riegel has suffered damages, in an amount to be proven.

53. Wherefore Mr. Riegel requests that all issues be tried to a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant-Counterclaim Plaintiff Michael Riegel respectfully requests that this Court enter a Judgment and Order in his favor and against Plaintiff-Counterclaim Defendant International Business Machines Corporation as follows:

A. Dismissing the Complaint with prejudice;

B. On the First Counterclaim, declaring that Mr. Riegel did not violate Equity Award Agreements, Prospectuses or Terms and Conditions to those Equity Award Agreements, or the Non-Competition Agreement, and declaring that Mr. Riegel has the right to keep the $285,760.93 that IBM paid him in connection with his Equity Awards;

C. On the Second Counterclaim, declaring that the Non-Competition Agreement is unenforceable under New York law with respect to Mr. Riegel;

D. On the Third Counterclaim, awarding Mr. Riegel damages in an amount to be proven, plus attorneys' fees, statutory interest and costs;

E.      On the Fourth Counterclaim, awarding Mr. Riegel damages in an amount to be proven, plus attorneys' fees, statutory interest and costs;

F.      On the Fifth Counterclaim, awarding Mr. Riegel damages in an amount to be proven, plus attorneys' fees, statutory interest and costs.

Dated:  New York, New York
          January 21, 2014

WINSTON & STRAWN LLP

By:   /s/ Richard F. Lawler
      Richard F. Lawler
      William M. Sunkel
      200 Park Avenue
      New York, New York  10166
      (212) 294-6700
      rlawler@winston.com
      wsunkel@winston.com

*Attorneys for Defendant-Counterclaim Plaintiff Michael Riegel*